[No. 933.   April 25, 1902.]

FRED H. JUNG, Appellant, v. BEN MYER, Appellee.

SYLLABUS.

1. Laws 1901, c. 82, authorizing appeals to the Supreme Court from interlocutory orders affecting substantial rights, is invalid, as being in conflict with the organic act, providing that appeals shall be allowed in all cases "from final decisions of district courts to the Supreme Court, under such regulations as may be prescribed by law."

2. An order vacating an attachment is not a final decision, within the provision of the organic act authorizing an appeal to the Supreme Court from final decisions of the district court.

Appeal from the district court of Bernalillo county, before J. W. CRUMPACKER, Associate Justice.    Appeal dismissed.

R. W. D. BRYAN for appellant.

Jurisdiction of the court is a matter of statutory regulation.

Section 10 of the Organic Act, establishing the Territory of New Mexico; Kearney Code, section 9 on Courts and Judicial Powers.

See also sections 868, 879, 3136, 3137, Compiled Laws, 1897, and subsections 160 and 161 of section 2685, Compiled Laws, 1897.

The jurisdiction of the Supreme Court was greatly enlarged by Act of March 21, 1901.

Laws of New Mexico, 1901, p. 159.

An order such as is involved in this case is appealable.

Sherman v. Boehm, 15 Alb. N. C. (N. Y.) 251, 7 N. Y. Civil Proc. 54; Tharin v. Seabrook, 6 S. C. 113; Belesena Coal Min. Co. v. Liberty Dredging Co., 53 N. Y. Sup. 747; Murphy v. Weil, 57 Wis. 1112.

See also Walters v. Starnes, 24 S. E. (N. C.) 713.

NIELL B. FIELD for appellee.

The Legislature of New Mexico has attempted to confer upon this court jurisdiction to review the action of the district courts in certain enumerated cases, where the judgments authorized to be reviewed are confessedly not final in character. Such legislation is inconsistent with, if not in direct conflict with the organic act of the Territory.

Compiled Laws of New Mexico, 1897, p. 43.

The appellate jurisdiction of this court is derived from the organic act and not from the acts of the Legislature. The appellate jurisdiction prescribed by the organic act precludes the exercise of any other appellate jurisdiction.

Syllabus in 7 Wallace 506; Ferris v. Higley, 20 Wallace 375; Harris Mfg. Co. v. Walsh, 2 Dakota 43.

Legislation attempting to confer jurisdiction upon the Supreme Court to review judgments not final in character is void.

> N. P. Irrigation Company v. Canal Co., 46 Pac. (Utah) 824; Eastman v. Gurrey, 46 Pac. 828.

In 1882 the Legislature passed an act which is compiled as section 529 of the Compiled Laws of 1884 as follows: "The Supreme Court shall hold two sessions annually at the seat of government, commencing on the first Monday in January and the second Monday in June, and continue until the business on hand is disposed of." This act was always ignored because it was inconsistent with the provision of the organic act requiring the holding of only one term annually.    The Legislature approved the "one term" construction.

> Laws of New Mexico, 1891, p. 36.

Again in 1899 the Legislature approved the "one term" construction by fixing the time for holding the one term on the first Wednesday after the first Monday in January and by providing for adjournments of such term from time to time.

> Laws of New Mexico, 1899, p. 26.

### STATEMENT OF THE CASE.

This is an appeal from an order of the district court of the Second judicial district, denying plaintiff's motion to strike the answer of the defendant from the records, and for judgment by default.

### OPINION OF THE COURT.

McMILLAN, J.—It is urged on behalf of the respondent that this court is without jurisdiction to hear the appeal taken herein, as the act of the Legislature authorizing appeals where the judgment appealed from is not final in its character, is inconsistent with if not in direct conflict with the organic act of the Territory.

Jung v. Myer.

The provisions of chapter 82 of the Laws of 1901, under which it is claimed on behalf of appellant that this appeal is authorized, are as follows: "The Supreme Court of the Territory shall have exclusive jurisdiction to review upon appeal or writ of error all judgments, orders and decrees, made or rendered in the district courts in either of the following cases: (a) Where a final judgment has been rendered in an action commenced in the district court, or a justice of the peace; also to review an interlocutory judgment or order or decree involving the merits of any cause, and necessarily affecting the final judgment. (b) Where an order, judgment or decree has been made or rendered in any action affecting a substantial right, which either in effect determines the action, or prevents a final judgment, or discontinues the action, or grants, or refuses a new trial, or determines a statutory provision of the Territory to be unconstitutional or in conflict with the organic law of the Territory, or determines a demurrer which goes to the substantial right of the case. (c) Where a final order, judgment or decree affecting a substantial right has been made in a special proceeding or upon a summary application in an action after judgment, and any intermediate order, judgment or decree, involving the merits of the action. When an order or judgment dissolving or sustaining an attachment is rendered in the district court, such order or judgment may be reviewed on appeal or writ of error, taken or sued out by any person aggrieved thereby."

This act clearly authorizes an appeal from an interlocutory order affecting a substantial right, and unless its provisions are in conflict with the organic act, the questions presented by the appeal are properly before this court.

The provisions of the organic act limiting the jurisdiction of the Supreme Court upon appeals, in so far as the same are material to the questions herein presented, are as follows:

"That the judicial power of said Territory shall be vested in a Supreme Court, district courts, probate courts, and in justices of the peace. . . .  The jurisdiction of the several courts herein provided for, both appellate and original, and that of the probate courts and of justices of the peace, *shall be as limited by law*: *Provided* . . .  That the said Supreme and district courts, respectively, shall possess chancery as well as common-law jurisdiction. . . .  Writs of error, bills of exception, and appeals, shall be allowed in all cases from the *final decisions* of said district courts to the Supreme Court, *under such regulations as may be prescribed by law,* but in no case removed to the Supreme Court, shall trial by jury be allowed in said court. . . ."

These provisions are limitations on the appellate jurisdiction of this court, and must be considered in connection with the legislative power and authority granted by the organic act, which are as follows:

"That the legislative power of the Territory, shall extend to all rightful subjects of legislation, consistent with the constitution of the United States and the provisions of this act."

The language used in the organic act regulating writs of error, bills of exception and appeals, is clear and specific. It provides that they "shall be allowed in all cases from the final decision of said district courts to the Supreme Court, *under such regulations* as may be prescribed by law."

The Supreme Court derives its appellate jurisdiction from the organic act, and by the terms of the act itself, it has no appellate jurisdiction except from *final decisions* of the district courts. It was by the provisions of the organic act that the Supreme Court was brought into existence, and all of its jurisdiction is derived from the organic act and subsequent congressional legislation. Arellano v. Chacon, 1 N. M. 269, in which the court says:

"The judicial powers of this Territory are clearly vested and carefully distributed by Congress, in what

is termed the organic act.  This act declares that the
several courts, both appellate and original, and those
of the probate and justices of the peace, should have
jurisdiction as limited by law.  It then immediately pro-
ceeds to prescribe by law, limits to justices of the peace,
and confining them beyond the power of the Territorial
legislature to enlarge, and in very sane sentence vests
the Supreme and district courts 'with chancery as well
as common law jurisdiction.'  So plain and complete an
endowment of judicial power in the courts of highest
dignity and authority in the Territory must be taken
as negativing the like jurisdiction in the inferior courts,
as also excluding the Legislature from the authority to
clothe them with the jurisdiction so affirmatively re-
posed in the Supreme and district courts."

It has been urged, not only in the case at bar, but
elsewhere, that the words of the organic act, "The juris-
diction of the several courts herein provided for, both
appellate and original, and that of the probate courts,
and of justices of the peace, *shall be as limited by law*,"
delegates to the territorial Legislature the power to reg-
ulate the jurisdiction of the several courts.  We can not
approve of this construction, for the reason that the
organic act, *after* the words above quoted, further pro-
vides that, "The said Supreme Court and district courts,
respectively shall possess chancery as well as common
law jurisdiction," and further, "Writs of error, bills of
exception, and appeals, shall be allowed in all cases from
the final decisions of said district courts to the Supreme
Court, under such regulations as may be prescribed by
law, but in no cause removed to the Supreme Court shall
trial by jury be allowed in said court."

It will be seen from these quotations from the or-
ganic act, that the jurisdiction of the Supreme and dis-
trict courts has been specifically defined, first that they
shall possess chancery and common-law jurisdiction, and
that the Supreme Court shall have appellate jurisdic-
tion, and that writs of error, bills of exception, and ap-

peals shall be allowed in all cases from the final decis-
ions of the district courts to the Supreme Court. It
will be observed that the procedure by which writs of
error, bills of exception, and appeals, are perfected, is
left to the legislative assembly by the use of the words,
"under such regulations as may be prescribed by law."
It is only the regulation of procedure that is delegated to
the legislative assembly, whereas the words used in con-
nection with the jurisdiction of the several courts are of
an entirely different purport.

In Huntington v. Moore et al., 1 N. M. 471, the court
says:

"That part of the organic act which provides that
appeals shall be allowed 'under such regulations as may
be prescribed by law,' is only intended to give to the
Legislature the power of prescribing the manner in
which appeals may be taken after final judgment or
decree is had. This power they appear to have exercised,
and have prescribed the manner in which appeals may
be taken to the Supreme Court on final judgment or de-
cree."

The first declaration in the organic act touching the
question of jurisdiction, is to the effect that "the juris-
diction of the several courts herein provided for, both ap-
pellate and original, and that of the probate courts, and
of justices of the peace, shall be as limited by law."
Then follow the various specific limitations as to the
jurisdiction of the Supreme and district courts; so that
we must conclude, upon a fair construction, that the
words, "shall be as limited by law," refer to the subse-
quent specific provisions touching the jurisdiction of
such courts as are set forth in the organic act itself.

In Archibeque v. Miera, 1 N. M. 160, the court says:
"The jurisdiction of these several courts is thus limited
by the organic law as to their appellate and original
powers. It fixes their character; and that portion of the
organic act which provides that the jurisdiction of the
several courts herein provided for, both appellate and

original, and that of the probate courts and of justices
of the peace, shall be as limited by law, provided, etc.,
it does not confer upon the Legislature the power to
bestow upon the Supreme Court original jurisdiction,
nor appellate powers upon the other courts therein men-
tioned.   It only provides that the jurisdiction of the
Supreme Court, with its appellate power, shall be as
limited by law."

Some weight and potency must be given to the decla-
ration in the organic act wherein it declares that writs of
error, bills of exception and appeals, shall be allowed
in all cases from *final decisions* of the district courts
to the Supreme Court.   These are words of limita-
tion which can not be disregarded, and the use of them
in fixing the jurisdiction of the court necessarily implies,
according to the well-established rules of constitutional
and statutory construction, that every other right ex-
cepting those designated is denied.

"No maxim of law is of more general and uniform
application than *'expressio unius est exclusio alterius.'*
This is 'never more applicable than when applied to the
interpretation of a statute.'

"In a Territory the constitution and laws of the
United States and especially the organic act of the Ter-
ritory itself, stands exactly in the relation a State con-
stitution occupies in a State.  All Territorial enactments
not consistent with them are null and void."  In matter
Attorney-General, 2 N. M. 49.

Territory v. Ortiz, 1 N. M. 5, in which the Territorial
Legislature attempted to extend the jurisdiction of the
court by the adoption of the provisions of the Kearny
code.   In this case the court says:

"The fact that the legislative assembly continued
in force the Kearny code does not affect the matter; for,
if the legislative assembly had power to adopt the or-
ganic law in the Kearny code, and enforce obedience to
its requirements, it would be the virtual assumption of

sovereignty, and operate as a repeal of the form of gov-
ernment furnished by Congress for this Territory. It has
been repeatedly decided in courts of the highest author-
ity, that an affirmative grant of original jurisdiction im-
plies a negative upon its exercise in any other case."

In construing constitutional enactments, no power
is conferred by implication, except that which is essen-
tial to carry delegated power or authority into effect.

Although the constitution is not a grant of power
to the Legislature, but a limitation upon its general
powers, which it may exercise where not restrained by
constitutional provisions, yet the judiciary can exercise
no power not conferred by the constitution. Field v.
People, 3 Ill. 79.

It is urged on the part of the respondent that the
limitation contained in the organic act is a limitation
placed upon the Territorial Legislature, and not a limi-
tation placed upon the appellate jurisdiction of this
court. That the Legislature should not have the power
to take away from the people their right of appeal to
the Supreme Court from all final decisions of the district
court, leaving it at the option of the Territorial Legis-
lature to enlarge the appellate jurisdiction of this court
from causes other than final decisions of the district
court, and by other means than by appeal or writ of
error.

Local laws can never confer jurisdiction on the
courts of the United States; they can only furnish rules
to ascertain the rights of parties, and thus assist in the
administration of the proper remedies where the juris-
diction is vested by the laws of the United States. The
Steamboat Orleans v. Phoebus, 11 Peters 175.

In North Point C. I. Co. v. Utah and Salt Lake
Canal Co., 46 Pac. 824 the court says:

"In each the right of appeal is from a final judg-
ment. If the intention was to guaranty the right of ap-
peal from a final judgment, and confer upon the Leg-
islature implied power to authorize appeals in all other

cases from the district courts, then the same guaranty
with implied powers is also retained, and to be applied
to justices' courts as well as the courts in the administra-
tion of estates.  It would be no answer to this that the
Legislature had previously conferred the power in one
case and withheld it in the other.  If the power exists
in the Legislature, the right could be conferred upon
justices' courts at any time.  It is apparent that such
an unfortunate construction or implication was not con-
templated nor intended.  It would be presuming too
much to say that the framers of the constitution were
fearful that the Legislature would enact laws preventing
appeals from final judgments, and that, therefore, this
provision was inserted, giving a guaranty of the right
of appeal from such judgments, thus leaving to the Leg-
islature the right to enact laws allowing appeals from
interlocutory orders.  Especially is this so when we con-
sider the fact that nearly every State in the Union al-
lows appeals from final judgment, and restricts or pro-
hibits appeals from interlocutory orders as being against
the policy of the law.  The framers of the constitution
could not have anticipated that the Legislature would
do an unreasonable thing, and thus take away the right
of appeal from a final judgment, when that right has
grown to be almost inherent, and yet use words suffi-
cient to authorize it to do that which in most states is
considered questionable, and by eminent law writers to
be against the policy of the law.

In granting the right of appeal from all final judg-
ments the people intended to grant the right of appeal
from all final judgments only.  The Supreme Court, be-
ing a creature of the constitution, has only such powers
as are therein conferred upon it.  The only jurisdiction
that is conferred by the constitution upon the Supreme
Court in appeal cases is appeals from final judgments.
There is no express declaration that appeals shall not
lie from judgments other than final judgments but the
court considers the affirmative declaration, as used in

the section, that 'from àll final judgments of the district court, there shall be a right of appeal to the Supreme Court,' as manifesting the intent of the framers of the constitution to except from the appellate jurisdiction of the Supreme Court appeals from the district courts, other than appeals from final judgments. This intention and implication is founded on the manifest intent of the framers of the constitution, and upon the general rules of construction that the expression of one thing in the constitution implies the necessary exclusion of things not expressed. We are of the opinion that when the framers of section 9 used the terms, 'from all final judgments of the district court there shall be a right of appeal to the Supreme Court,' they intended to deny the right of appeal to the Supreme Court in all other cases, although no express terms of negation were used."

It is immaterial whether the above case was commenced while Utah was yet a Territory, and under the provisions of the organic act, or was decided after it had become a State and had adopted a constitution. The principle enunciated therein is the same as the principle involved in the case at bar. Are the limitations in the organic act limitations upon the power of the Legislature, or are the limitations upon the jurisdiction of the Supreme Court? We can arrive at no other conclusion than that it was the intention of Congress, by using the term "final judgments" in the organic act, to limit appeals to the Supreme Court to appeals from final judgments, and by the use of that term it excluded appeals from interlocutory orders with the same force and effect as though such provisions were embodied in the organic act itself.

Durousseau v. United States, 10 U. S. (6 Cranch) 307, Chief Justice Marshall says:

"The appellate powers of this court are not given by the judicial act. They are given by the constitution. But they are limited and regulated by the judicial act,

and by such other acts as have been passed on the subject. When the first Legislature of the Union proceeded to carry the third article of the constitution into effect, they must be understood as intending to execute the power they possessed of making exceptions to the appellate jurisdiction of the Supreme Court. They have not, indeed, made these exceptions in express terms. They have not declared, that the appellate power of the court shall not extend to certain cases; but they have described affirmatively its jurisdiction, and this affirmative description had been understood to imply a negative on the exercise of such appellate power as is not comprehended within it."

To the same effect is Ex parte M'Cardle, 7 Wall. 506, in which the Chief Justice says:

"The principle that the affirmation of appellate jurisdiction implies the negation of all such jurisdiction not affirmed having been thus established, it was an almost necessary consequence that acts of Congress, providing for the exercise of jurisdiction, should come to be spoken of as acts granting jurisdiction, and not as acts making exceptions of the constitutional grant of it."

In Hornbuckle v. Toombs, 18 Wall. 648, the court says:

"From a review of the entire past legislation of Congress on the subject under consideration, our conclusion is that the practice, pleadings, and forms and modes of proceeding of the Territorial courts, as well as their respective jurisdictions, subject, as before said, to a few express or implied conditions in the organic act itself, were intended to be left to the legislative action of the Territorial assemblies, and to the regulations which might be adopted by the courts themselves."

From this last decision it clearly appears that the Supreme Court of the United States recognized the express and implied conditions of the organic act wherein the jurisdiction of this court is limited in the organic act, leaving to the Legislature all questions touching the

practice, pleading, form and mode of procedure, and in the establishment of new rights and remedies within their legislative power it may direct in what court they shall be had. Ferris v. Higley, 20 Wall. 375.

In Harris Manufacturing Co. v. Wallace, 2 Dak. 41, Mr. Justice Moody, for the court, says:

"This court is the creature of Congress. By the acts of Congress and by the force of those acts only has this court any existence. Its appellate powers and jurisdiction are derived solely from those acts. The law of no other tribunal can confer them. Just so far as Congress has conferred appellate powers and jurisdiction, either by direct enactments or through delegated authority, it possesses them and can exercise them, and it does not possess and cannot exercise other or greater powers. When Congress enacts that this court shall have appellate jurisdiction over *final decisions* of the district courts, the act operates as a negation of such jurisdiction in other cases.

"It is true that section 1866 of the United States Revised Statutes provides that the jurisdiction of the Supreme Court, as well as the district court, both appellate and original, shall be as limited by law; but when construed with section 1869 cannot be held as authority for enlarging the jurisdiction of the Supreme Court in the exercise of its appellate powers beyond the cases provided in section 1869, but must be construed only as authority to limit its jurisdiction within the limitation prescribed by that section.

"By what authority, then, can this court hear and determine this appeal from a mere order before *final judgment?* It is said to be claimed under the authority of the Territorial enactment regulating appeals. My own view of that statute is, that it should be construed as a mere regulation under, and subordinate to, said section 1869, and as providing what orders may be reviewed when appealed from in conjunction with the appeal from the final judgment, and after final termina-

tion of the litigation in the district court; and when so construed, can be sustained. But if it is to be construed as enlargement of the appellate powers and jurisdiction of the Supreme Court to the extent that independent appeals may be taken in cases like the one under consideration, or from mere interlocutory orders and decisions and before final judgment, I have no hesitation in pronouncing it contrary to the provisions of the act of Congress, and therefore in such particular and to that extent a nullity."

A distinction has been urged to the effect that an appeal from an order setting aside or vacating an attachment is not interlocutory in its character, but is final. This distinction is untenable. It is well settled that proceedings with reference to an attachment are in their nature proceedings in abatement, and are not final as to the rights of the parties. Leitensdorfer et al. v. Webb, 20 Howard (61 U. S.) 176.

We are therefore led to the conclusion that chapter 82 of the laws of 1901, in so far as it attempts to extend the appellate jurisdiction of the Supreme Court to the reviewing of questions other than appeals from final judgments, is in conflict with the organic act of the Territory, and therefore void.

There being no legal authority for the appeal taken herein, it should be dismissed, with costs to be paid by appellant. And it is so ordered.

Parker, Mills, McFie and Baker, JJ., concur.